UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
OSCAR DARIO VALENCIA,

                                                                                                   11 Civ. 1221 (RPP)
                                                                                                   09 Cr. 710 (RPP)

                                  Petitioner,

   -against-

                                                                                        **ORDER & OPINION**

UNITED STATES OF AMERICA,

                                  Respondent.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

## I. INTRODUCTION

On February 16, 2011, Petitioner Oscar Dario Valencia ("Petitioner" or "Valencia"), pro se, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner requests that his sentence be reduced to probation on the grounds that his incarceration is a hardship on his family.

## II. BACKGROUND

On July 21, 2009, an information was filed against Valencia in the instant case, charging him with one count of conspiring to distribute and possess with the intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(b)(1)(A). On February 17, 2010, pursuant to a plea agreement with the Government (the "Plea Agreement"), Valencia pleaded guilty to the lesser offense of conspiring to distribute and possess with the intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 841(b)(1)(B). The Plea Agreement contained a stipulation that the applicable United States Sentencing Guidelines range was 51 to 71 months' imprisonment (the

"Stipulated Guidelines Range"). (See Gov.'s Mem. in Opp. to Pet'r's Mot. to Vacate ("Gov.'s Mem.") Ex. A at 3.) The Plea Agreement also provided that:

> The parties agree that neither a downward nor an upward adjustment or departure from the Stipulated Guidelines Range . . . is warranted. Accordingly, neither party will seek a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Probation Department consider such a departure or adjustment, or suggest that the Court sua sponte consider a departure or adjustment.
>
> \*          \*          \*
>
> However, the parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Department consider a sentence outside of the Stipulated Guidelines Range, and suggest that the court sua sponte consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

(Id.) Before accepting Valencia's guilty plea, the Court conducted an allocution in full compliance with Rule 11 of the Federal Rules of Criminal Procedure. (See Gov.'s Mem. Ex. C.) After being satisfied that Valencia's allocution covered each of the elements of the crime charged, the Court accepted his guilty plea. (Id. at 19.)

On July 29, 2010, the Court held a sentencing hearing. First, the Court heard from Valencia's counsel, who argued for a downward variance from the Stipulated Guidelines Range due to "extraordinary mitigating circumstances." (Transcript of July 29, 2010 Sentencing Hearing at 7.) Defense counsel stated that the Government's sentencing recommendation over-emphasized Valencia's prior conviction for money laundering, and failed to acknowledge Petitioner's (1) successful completion of probation in that case, (2) his cooperation with the Drug Enforcement Administration ("DEA") in providing information to apprehend a Colombian drug trafficker who had fled the United States to Colombia in 2008 (the "Columbian trafficker"), (3) his actual role in the instant offense, and (4) his personal history. (Id. at 7-15.) In response, the

Government urged the Court to balance Valencia's cooperation against his prior criminal record, and to impose a sentence within the Stipulated Guidelines Range. (Id. at 22.)  After hearing from both sides, the Court requested more information about the extent of Valencia's cooperation, and his role in aiding the Government in capturing the Columbian trafficker.  (Id. at 24-25.)  The Court also requested information regarding the whereabouts of Valencia's co-conspirator in the instant case.  (Id. at 16-17.)  The Court set a new sentencing date of August 4, 2010.  (Id. at 25.)

During the sentencing hearing on August 4, 2010, the Government informed the Court that Valencia's co-conspirator in the instance case had not yet been apprehended, and that the DEA was in the process of trying to apprehend him based on information provided by Valencia. (Transcript of Aug. 4, 2010 Sentencing Hearing at 3.)  Furthermore, the Government informed the Court that through Valencia's assistance, the DEA had ultimately been able to locate the Columbian trafficker, who was now in the process of being extradited to face charges in the United States.  (Id. at 4-5.)  Petitioner's counsel reiterated his arguments from the July 29, 2010 sentencing hearing regarding a downward variance from the Stipulated Guidelines Range.  (Id. at 6-7, 10-12.)  He also referenced Valencia's steady employment history, his acceptance of the debt on his restaurant during his divorce, the educational loans he took out for his children, and the letters submitted to the Court by Valencia's children. (Id. at 10-12.)  After hearing from both sides the Court inquired about Petitioner's prior conviction for money laundering, for which Petitioner was sentenced to three years' probation by Judge Kaplan. (Id. at 13.)  The Government informed the Court that Judge Kaplan had put off the sentencing for over four years, during which time Valencia "provided very substantial cooperation to the government." (Id. at 13-14.)  The Court requested a copy of the Government's January 28, 2005 letter submitted to Judge Kaplan pursuant to § 5K1.1 of the United States Sentencing Guidelines (the "5K1 letter"),

3

in order to gain a better understanding of the nature of Valencia's cooperation in that case. (Id. at 17.) Specifically, the Court inquired as to whether Valencia simply aided the Government in apprehending his co-conspirators in the money laundering case, or if he also provided information leading to the arrest of individuals engaged in other criminal activities. (Id. at 14-17.)  A new sentencing date was set for August 10, 2010.

The Government was able to provide the Court with a copy of the 5K1 letter in advance of the next sentencing date. During Valencia's final sentencing hearing, the Court determined that, although the 5K1 letter demonstrated that Valencia cooperated in several investigations, the letter failed to reveal the extent to which his cooperation aided in the success of these investigations. (Transcript of Aug. 10, 2010 Sentencing Hearing ("Tr. 8/10/10") at 2-3.)  After taking into account Petitioner's continued employment, his cooperation in apprehending the Columbian trafficker, and the letters from his children, the Court sentenced Valencia to two years' imprisonment, five years of supervised release, and a $100 special assessment. (Id. at 3-4.)

On February 16, 2011, Valencia, pro se, filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Therein, Valencia requests "a reduction of sentence to probation pursuant to U.S.S.G. 5H1.6." (Pet'r's Mot. to Vacate at 5.)  As a basis for this relief, Valencia states that "Petitioner was the sole provider for his family, and wife who doesn't speak English. Because of Petitioner['s] incarceration, Petitioner['s] wife cannot afford to financially support his children, send them to school, and pay all the bills. Petitioner['s] family is suffering." (Id.)  On May 4, 2011, the Government filed a memorandum of law in opposition to Valencia's petition, in which it contends that Valencia's petition should be denied because the Court already took into account his family circumstances in deciding to impose a below-Guidelines sentence. (Gov.'s Mem. at 1.)  Petitioner did not file a reply.

### III. LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner seeking to vacate his sentence must establish that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, . . . ." 28 U.S.C. § 2255. Where the petitioner fails to assert constitutional or jurisdictional error, the writ of habeas corpus "will not do service for an appeal." Stone v. Powell, 428 U.S. 465, 477 n.10 (1976) (internal quotation omitted). Nevertheless, non-constitutional and non-jurisdictional claims that reveal "a fundamental defect which inherently results in a complete miscarriage of justice" present "exceptional circumstances" justifying collateral relief under section 2255. Davis v. United States, 417 U.S. 333, 346 (1974) (internal quotation omitted).

### IV. DISCUSSION

Valencia's motion does not assert a constitutional or jurisdictional error, nor does his claim amount to a "fundamental defect which inherently results in a complete miscarriage of justice" requiring relief under § 2255.[1] Id. Rather, Valencia's claim of hardship on his family constitutes a plea of leniency, which is not cognizable under 28 U.S.C. § 2255. See Wright v. United States, No. 92 Civ. 6643, 1993 WL 246229 at *1 (S.D.N.Y. June 29, 1993); Silano v. United States, 621 F. Supp 1103, 1104 (E.D.N.Y 1985). Moreover, the Court fully considered Valencia's familial circumstances in arriving at a sentence which was well below the Stipulated Guideline Range.[2]

---

[1] United States Sentencing Guideline § 5H1.6, entitled "Family Ties and Responsibilities (Policy Statement)" reads, in pertinent part "[i]n sentencing a defendant . . . family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." United States Sentencing Commission, Guidelines Manual, § 5H1.6 (Nov. 2011).

[2] In imposing this sentence, the Court stated:

5

## V. CONCLUSION

Petitioner has not alleged a constitutional or jurisdictional claim that would warrant relief under 18 U.S.C.§2255, nor has he pointed to a "fundamental defect" to trigger such relief. Therefore, his petition to vacate, set aside, or correct his sentence is denied. No hearing is necessary, as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.§2255; Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000).

The Court certifies, pursuant to 28 U.S.C.§1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C.§2253.

IT IS SO ORDERED.

Dated: New York, New York
       March 5, 2012

                                                    _____
                                                    Robert P. Patterson, Jr.
                                                    U.S.D.J.

---

> Now, this was a difficult sentence for me, Mr. Valencia, because for one thing you apparently are a man who knows how to work hard and has worked hard throughout your life. You've got two fine children. The letter from your son is a particularly touching one. I served in the military myself and I know what sacrifice is in time of war and he undoubtedly knows what it is also. Your daughter also wrote a fine letter. And the points that [Defense counsel] made in your behalf were meaningful points that resulted in my varying the sentence under the 3553(a) because of the points he raised. I didn't see that I could reduce it more because for you to go out and commit this crime after having been involved in money laundering with narcotics proceeds before and having cooperated you fully knew what you were doing.

(Tr. 8/10/10 at 7.)

**Copies of this Order were sent to:**

*Petitioner*:
Oscar Dario Valencia, pro se
Reg# 13732-014
MDC Brooklyn
P.O. Box 329002
Brooklyn, NY 11232
(by mail)

*The Government*:
James J. Pastore, Jr.
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
Phone: (212) 637-2418
Fax: (212) 637-2937
(by fax)